UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **ERIK SALAIZ,** § <br> § <br> **Plaintiff,** § <br> § <br> v. § <br> § <br> **COLUMBIAN LIFE INSURANCE COMPANY** § <br> a Illinois Corporation § <br> § <br> **Defendant.** § <br> § | Case No. 3:23-cv-00444-KC |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff ERIK SALAIZ is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

2. Defendant COLUMBIAN LIFE INSURANCE COMPANY ("Columbian" "Defendant") is a corporation existing under the laws of Illinois with its principle address at 4704 Vestal Parkway East, Binghamton, New York 13902 and can be served via its registered agent Chief Financial Officer at 200 E. Gaines Street, Tallahassee, Florida 32399.

3. Unnamed Party JOHN DOE TELEMARKETER ("John Doe") is an unidentified offshore telemarketing company that makes solicitation phone calls at the instruction, direction, and oversight of Defendant Columbian.

### NATURE OF ACTION

4. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives

1

a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

5. Plaintiff Erik Salaiz ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant's telemarketers placed illegal telemarketing calls to him in violation of the TCPA.

6. As part of marketing their services, Defendant Columbian hired and authorized their affiliates/telemarketers to place illegal robocalls to Plaintiff's personal cell phone using an artificial or prerecorded voice message.

7. Plaintiff never consented to receive any of these phone calls, which were placed to him for telemarketing purposes.

## JURISDICTION AND VENUE:

8. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

9. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 and 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendant's telemarketing calls to Plaintiff, and adds little complexity to the case, so it is unlikely to predominate over the TCPA claims.

10. This Court has personal jurisdiction over the Defendant because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

11.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant regularly conducts business in the State of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## **THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

12.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

13.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

14.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

15.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

16. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

17. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

18. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

19. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

20. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any goods or service.

21. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

22. The FCC confirmed this principle in 2013, when it explained that "a seller …may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

23. Under the TCPA, a text message is a call. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

**FACTUAL ALLEGATIONS:**

24. Plaintiff successfully registered his personal cell phone (XXX) XXX-6805 on the National Do-Not-Call Registry on May 19, 2022, which was more than 31 days prior to receiving the alleged calls.

25. Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

26. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

27. Plaintiff's telephone number 6805 is a residential number and is registered to a cellular telephone service.

28. Plaintiff's telephone number 6805 is not used for commercial purposes.

29. Plaintiff uses telephone number 6805 for personal calls.

30. Defendant Columbian offers life insurance products to consumers.

31. Defendant Columbian hires licensed insurance agents to market and sell life insurance products on behalf of Defendant Columbian.

32. Defendant Columbian appointed Marvin Osuna ("Osuna") as a licensed insurance agent and gave Osuna expressed and apparent authority to market insurance products as part of the furtherance of Columbian's business.

33. Osuna and/or Columbian contracted with an unknown third-party telemarketer (John Doe) to market and solicit insurance products on behalf of Osuna and Columbian.

34. Osuna and/or Columbian supplied John Doe with the age, health, income, and state of residence requirements to purchase the insurance products being marketed by John Doe on behalf of Osuna and Columbian.

35. Osuna and/or Columbian are aware an artificial or prerecorded voice message is being used by John Doe to market and solicit insurance products on their behalf and have done nothing to stop the telemarketing campaign.

36. The artificial or prerecorded voice message used by John Doe was designed and crafted by Osuna and/or Columbian.

37. Osuna and/or Columbian gave access to proprietary information to John Doe to assist in the robocalling campaign.

38. Both Osuna and Columbian continue to benefit from the telemarketing robocalls.

39. Columbian provided Osuna with access to real-time quotes and pricing information for the solicited life insurance products.

40. Osuna had implied and actual authority from Columbian to coordinate sales agents' solicitation of sales of Columbian's insurance products, including through the use of telemarketing lead generation.

41. John Doe unknown entity, that through information and belief, is located offshore and out of the jurisdiction of the United States and the State of Texas.

42. John Doe makes solicitation telephone calls at the direction, instruction, and guidance of Osuna and/or Columbian.

43. Defendant Columbian and Osuna are well aware that the unauthorized phone calls being made on their behalf by John Doe are being made in violation of the TCPA.

44. John Doe makes these calls on behalf of Osuna and/or Columbian without obtaining prior express written consent from the consumers they call.

45. John Doe knowingly and willfully makes solicitation phone calls on behalf of Osuna and Columbian to consumers that have their residential phone numbers (including cell phones) registered on the National Do-Not-Call Registry.

46. Osuna and Columbian approve of the contracts with John Doe.

47. **Call #1** – On August 7, 2023, at 4:55 PM, Plaintiff received a call to his phone 6805 from phone number (915) 465-6299.

48. **Call #2** – On August 10, 2023, at 11:08 AM, Plaintiff received a call to his phone 6805 from phone number (915) 955-2680.

49. **Call #3** – On August 18, 2023, at 8:27 AM, Plaintiff received a call to his phone 6805 from phone number (915) 313-6609.

50. Plaintiff answered each of the calls 1-3 and heard the same artificial or prerecorded voice message soliciting life insurance.

51. Plaintiff was not interested and disconnected each of these calls.

52. **Call #4** – On August 29, 2023, at 12:21 PM, Plaintiff received a call to his phone 6805 from phone number (915) 591-8310.

53. Plaintiff answered and heard the same artificial or prerecorded voice message from the first three calls.

54. The artificial or prerecorded voice message does not identify Osuna or Defendant Columbian.

55. Plaintiff engaged in the call for the purpose of identifying who was responsible for the alleged calls.

56. Plaintiff was connected to a male telemarketer with an Indian accent who advised Plaintiff the call was regarding life insurance.

57. The male telemarketer started asking Plaintiff qualifying questions provided by Osuna and/or Defendant Columbian.

58. Without any interruption or disconnection, the male telemarketer live transferred Plaintiff to Defendant Columbian's agent Osuna.

59. Osuna asked Plaintiff more qualifying questions and solicited Plaintiff for a life insurance policy.

60. As a result of the alleged calls Plaintiff received a life insurance policy in the mail from Defendant Columbian.

61. The life insurance policy lists Osuna as Defendant Columbian's agent. *See Exhibit A*.

62. The life insurance policy shows Osuna gets paid a commission fee from Defendant Columbian. *See Exhibit B*.

63. Both Defendant Columbian and Osuna benefit financially for the policy solicited to Plaintiff that originated from illegal telemarketing.

64. Plaintiff logged these calls as John Doe continued to bombard Plaintiff with unwanted solicitation calls.

65. From the apparent authority of Osuna and/or Columbian, John Doe spoofed the Caller ID on every call made to Plaintiff.

66. Upon information and belief Plaintiff has received additional robocalls within the past year from John Doe calling on behalf of Osuna and/or Columbian soliciting life insurance products that are unknown to Plaintiff at this time but will be revealed during discovery.

67. Plaintiff has never been a customer of Defendant Columbian and has had no relationship with Defendant Columbian.

68. With information and belief Defendant Columbian relies on John Doe to make telemarketing calls on its behalf, Defendant Columbian has direct knowledge that such calls are being made to residential numbers (including cell phones) that are registered on the National Do Not Call Registry without prior express written consent.

69. Defendant Columbian ratifies the behavior from John Doe by knowing of the illegal conduct and failing to repudiate the conduct.

70. Plaintiff did not provide his prior express written consent to receive any of the alleged calls.

71. None of the alleged calls were made for emergency purposes.

72. Osuna and/or Columbian directly participated in the phone calls by providing John Doe with instructions on what states to call, the minimum age of the consumer, and the health status of the consumer.

73. Osuna and/or Columbian participated in, facilitated, directed, authorized, knew of, or willfully ignored the unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of John Doe to engage in the false and misleading sales practices and unlawful robocalling.

74. Defendant Columbian employs outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

75. Defendant Columbian has knowledge of and has adopted and maintained TCPA violations as a sales strategy.

76. Defendant Columbian willfully accepts new clients that generate through illegal telemarketing.

77. Defendant Columbian refuses to take any action to stop or curtail the unlawful sales practices that violate the TCPA because these practices benefit Defendant Columbian financially.

78. Upon information and belief, Defendant Columbian did not train their insurance agents or John Doe who engaged in telemarketing on the existence and use of Defendant Columbian's internal do not call policy as they failed to recognize Plaintiff's personal cell phone 6805 is registered on the National Do-Not-Call Registry.

79. Plaintiff was harmed by the calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

## VICARIOUS LIABILITY OF DEFENDANT COLUMBIAN

### Actual Authority

80. Actual authority exists when (1) a principal/agent relationship exists, (2) the principal controlled or had the right to control the alleged agent's conduct, and (3) the alleged conduct fell within the scope of the agency. See Spitz v. Proven Winners N. Am., LLC, 759 F.ed 724, 732

(7th Cir. 2014) (interpreting Illinois law, which like federal common law, accords with the Restatement of Agency, Opp v. Wheaton Van Lines, Inc., 231 F.3d 1060, 1064 (7th Cir. 2010)); see also Warciak v. Subway Rests., Inc., 949 F.3d 354, 357 (7 Cir. 2020) ("Express authority exists when a principal expressly authorizes an agent and the agent acts on the principal's behalf and subject to the principal's control.").

81. An agency relationship was created when Osuna and/or Columbian hired the anonymous third-party telemarketer who acted as Osuna and/or Columbian's agent when they initiated robocalls with prerecorded voice messages to Plaintiff's cell phone.

82. Osuna and/or Columbian exercised control over the third-party telemarketer by providing age restrictions, geographic location requirements, and physical health parameters of the solicited consumers and prescribing during what hours to make the phone calls.

83. Osuna entered into the telemarketing agreement in furtherance of Columbian's business of the solicitation of insurance products and was acting within the scope of his appointment as a licensed insurance agent of Columbian.

84. Columbian exercises control and authority over its appointed agents by prescribing the manner in which agents may solicit consumers.

85. Columbian donned John Doe with apparent authority to make the calls at issue. Thus, John Doe pitched Defendant's life insurance in the abstract.

86. Columbian expects appointed agents to market and sell insurance products as part of their appointment and in the furtherance of Columbian's insurance business.

87. Columbian appointed Osuna as an agent and gave him actual authority to market insurance products in furtherance of Columbian's business.

88. Columbian appointed Osuna to sell its insurance, hired John Doe to effectuate telemarketing, and John Doe made the unwanted robocalls on behalf of Columbian through its appointed agent Osuna.

89. Columbian is vicariously liable under the theories of actual authority and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

90. Defendant Columbian is the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a client and sold Plaintiff a life insurance policy.

91. The policy shows that the beneficial party who was gaining customers was Defendant Columbian.

92. Through Osuna, Defendant Columbian authorized John Doe to generate prospective customers. Defendant Columbian hired John Doe to promote its products and services. Defendant's integration of robocalling into its sales process was so seamless that it appeared to an outside party like Plaintiff that John Doe was the telemarketing department of Defendant Columbian.

**Ratification**

93. Ratification occurs when an agent acts for the principal's benefit and the principal does not repudiate the agent's actions. Sphere Drake Ins. V. Am. Gen. Life Ins., 376 F.3d 664, 677 (7th Cir. 2004).

94. A party "may ratify an act by failing to object to or to repudiate it," or by "receiving or retaining [the] benefits it generates." However, a party "is not bound by a ratification made without knowledge of material facts involved in the original act when the [party] was unaware of such lack of knowledge." Hodgin, 885 F.3d at 252 (citing various sections of the Restatement

(Third) of Agency (2006)). Here, Columbian ratified the actions of agent Osuna when Columbian retained Osuna an active licensed agent.

95. Columbian has ratified the telemarketing campaign by continuing to allow phone calls with an artificial or prerecorded voice message to continue to be marketed to consumers. The calls continue to be made on a daily basis to thousands, if not millions, of consumers.

96. Through information and belief Columbian is responsible for the marketing campaign and it either initiated the calling campaign or allows it to continue because it benefits Columbian's appointed agents and Columbian.

97. Columbian's telemarketer continues to make TCPA violating calls on behalf of Columbian and sell Columbian's products for the economic benefit of Columbian. Columbian is accepting these benefits with their eyes wide open as to the TCPA violative nature of the phone calls.

98. Columbian has ratified the robocalling campaign by failing to stop the calls and continuing to accept the benefits of the phone calls.

99. Another theory of ratification holds that a principal may be held liable if the principal receives or retains the benefits it generates.

100. Columbian continues to solicit insurance policies through the campaign despite full knowledge it violates the TCPA.

101. Columbian knows Plaintiff's insurance policy was sold through a phone call that violated the TCPA, yet Columbian continues to accept the benefits of that insurance policy and others sold through the robocalling campaign with full knowledge of the nature and circumstances surrounding the sale of the life insurance policies.

**Texas Deceptive Trade Practices Act Vicarious Liability of Columbian**

102. False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61 of this code. Texas Business and Commerce Code, Title 2, Chapter 17, Sec. 17.46.

103. Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes but is not limited to, the following acts: (2) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services and (3) causing confusion or misunderstanding as to the affiliation, connection, or association with, or certification by, another." Texas Business and Commerce Code, Title 2, Chapter 17, Sec. 17.46(2), (3).

104. Defendant committed a deceptive trade practice act violation when they did not identify themselves in the prerecorded voice message and used spoofed caller IDs causing Plaintiff to become confused as to the source of the phone calls and to misunderstand who was soliciting Plaintiff.

105. Insurance Companies are liable for Deceptive Trade Practices Acts committed by their agents under Texas Law. In Royal Globe Insurance Company v Bar Consultants, Inc. (1979) the Texas State Supreme Court found:

> Neither Article 21 .21 nor Section 1 7.46(b)( 12) require either expressly or by implication that an agent have actual authority before an insurance company can be found to have vicariously committed a deceptive act or practice. Section 1 of the regulations of the Board of Insurance impliedly negates such a requirement when they include acts "... whether done directly or indirectly, and irrespective of whether the person is acting as insurer, principal, agent, employer or employee, or in other capacity or connection with such insurer." See note 8, supra, for full text. To require actual authority would emasculate both Article 21.21 and Section 17.46 and provide a violator with an easily manufactured defense. It would only be necessary for a corporate principal to deny that an agent had actual authority to perform *694 an act, even though a reasonably prudent man, using diligence and discretion in view of the insurance company's conduct, would naturally suppose the agent possessed such authority. There is even stronger evidence of legislative intent that the absence of actual authority of an

14

agent is not a defense to a violation of Section 17.46 when the agent is clothed with apparent authority to do the act or make the representation. Section I 7.46(c)(2) provides that in construing actions brought under the Act, the legislative intent is that: the courts to the extent possible will be guided by Subsection (b) of this section and the interpretations given by the federal courts to Section 5(a)(l) of the Federal Trade Commission Act."

Numerous federal decisions made applicable to this case by Section 17.46(c), hold that lack of actual authority is not a defense if the agent is acting within the apparent scope of his authority, and not even instructions not to mislead nor diligence in preventing the misrepresentations will exculpate the corporate principal. Standard Distributors v. F.T.C., 211 F.2d 7 (2nd Cir. 1954); Goodman v. F.T.C., 244 F.2d 584, 591-3 (9th Cir. 1957). See Maxwell, Public and Private Rights and Remedies Under the Deceptive Trade Practices Consumer Protection Act, 8 St. Mary's L.J. 617, 638-39 (1977). Embrey as a local recording agent for Royal Globe, had statutory authority under Article 21.02 and Article 21.14(2) to sell insurance policies for the company and by necessary implication to represent the coverage afforded by such policies to the consumer. If his representations were false as the trial court here found, under the explicit language of Section 16, Article 21.21 and Section l7.46(b)(l2) of the DTPA, his actions constituted a deceptive act or practice for which his principal is accountable. Though it may be harsh to hold a principal liable for the deceptive acts of his agents where he does not authorize or have knowledge that they occurred, such result is clearly called for by the legislature's enactment of the DTPA. Woods v. Littleton, 554 S.W.2d 662, 669-71 (Tex.1977). The rationale behind this agency principle is expressed by Justice Learned Hand when he wrote: "... since the principal has selected the agent to act in a venture in which the principal is interested, it is fair, as between him and a third person, to impose upon him the risk that the agent may exceed his instructions." Standard Distributors v. FTC, supra, at p. 15. Royal Globe Ins. Co. v. Bar Consultants, Inc., 577 S.W.2d 688 (Tex. 1979)

106. Prevailing Texas State Law is clear that insurance companies are liable for deceptive trade practices committed by their appointed agents in the commission of their duties.

107. Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

108. Defendant Columbian is legally responsible for ensuring that John Doe that makes telemarketing calls on behalf of Defendant Columbian comply with the TCPA when so doing.

109. Defendant Columbian knowingly and actively directed the phone calls in this Complaint be made.

110. Furthermore, Defendant had day-to-day control over the actions of John Doe including the ability to prohibit them from using an artificial or prerecorded voice message to contact potential customers of Defendant and the ability to require them to respect the National Do Not Call Registry.

## OSUNA AND/OR COLUMBIAN INITIATED THE PHONE CALLS

111. Osuna and/or Columbian took active steps to initiate the phone calls at issue in this case by:

   1) Crafting and approving the pre-recorded voice message delivered to Plaintiff's cell phone

   2) Determining the times in which the phone calls would be placed to perspective consumers and which states to target as part of the campaign.

   3) Providing age, income, health, and residency requirements of consumers.

   4) Hiring John Doe to make the phone calls based on the stated criterion.

112. Defendant Columbian is vicariously liable for the telemarketing calls that generated the lead on their behalf.

## THE TEXAS BUSINESS AND COMMERCE CODE 305.053

113. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

114. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

115. Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the

functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing telemarketing calls.

116. The calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

117. Plaintiff has been annoyed, harassed, and irritated by unauthorized calls placed on behalf of Defendant Columbian.

118. The calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

## CAUSES OF ACTION:

## COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

119. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

120. Defendant and/or their affiliates or telemarketers violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least four (4) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using an artificial or prerecorded voice message without his prior express written consent.

121. Plaintiff was statutorily damaged at least four (4) times under 47 U.S.C. § 227(b)(3)(B) by the Defendant by the telephone calls described above, in the amount of $500.00 per call.

122. Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount

to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

123. Plaintiff is also entitled to and does seek an injunction prohibiting Defendant and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using an artificial or prerecorded voice message without prior express written consent.

### COUNT TWO:
### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

124. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

125. Defendant and/or their affiliates or telemarketers called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

126. Plaintiff was statutorily damaged at least four (4) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant by the telemarketing calls described above, in the amount of $500.00 per call.

127. Plaintiff was further statutorily damaged because Defendant willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under 47 U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

128. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE

### (Violations of The Texas Business and Commerce Code 305.053)

129. Plaintiff incorporates the foregoing allegations as if set forth herein.

130. The foregoing acts and omissions of Defendant and/or their affiliates or telemarketers constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing calls to Plaintiff's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 et seq. Defendant violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an artificial or prerecorded voice message that does not comply with the technical and procedural standards under this subsection.

131. Plaintiff seeks for himself an award of at least $500.00 in damages for each such violation. **Texas Business and Commerce Code 305.053(b).**

132. Plaintiff seeks for himself an award of up to $1,500.00 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the Defendant jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by the Defendant violates the TCPA and Texas state law;

C. An injunction enjoining the Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

  D. An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation for four (4) calls.

  E. An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation for four (4) calls.

  F. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053 intentional violations jointly and severally against the corporation for four (4) calls.

  G. An award to Mr. Salaiz of damages, as allowed by law under the TCPA and Texas state law;

  H. An award to Mr. Salaiz of interest, costs, and attorneys' fees, as allowed by law and equity;

  I. Such further relief as the Court deems necessary, just, and proper.

December 8, 2023,        Respectfully submitted,

             Erik Salaiz
             Plaintiff, Pro Se
             319 Valley Fair Way
             El Paso, Texas 79907
             915-465-6805
             Salaiz.ep@gmail.com